UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | § § § | |
| Plaintiff, | § § | Civil Action No. |
| vs. | § § | 6:08 CV 187 |
| GEORGE D. HUDGINS, individually and dba GEORGE D. HUDGINS, L.L.C., | § § § | |
| Defendant. | § | |

## INITIAL REPORT OF THE RECEIVER

Kelly M. Crawford, as the court-appointed Receiver, submits the following initial report pursuant to this Court's *Consent Order of Preliminary Injunction and Other Equitable Relief* (the "*Receivership Order*").[1]

The *Receivership Order* directs the Receiver to submit an initial report to the Court. More specifically, the order states:

> IT IS FURTHER ORDERED that the Receiver shall provide an initial report to the Court and the Parties within 30 days of the date of this order, subject to such reasonable extensions as the Court may grant, that details (i) all of Defendant's Assets, as defined in the SRO (including the location of such assets), contained in the Receiver Estate; and (ii) the account values for all accounts of pool participants or prospective pool participants or clients or investors controlled or managed by Defendant. The Receiver shall provide additional reports and/or updates as he deems necessary in the course of fulfilling his duties set forth herein or as requested by the Court.

*Receivership Order*, § II, ¶ 10.

---

[1] The Receiver requests the Court to take judicial notice of the pleadings on file in this lawsuit.

1

# I.
## IDENTITY, LOCATION AND EVALUATION OF
## DEFENDANT'S ASSETS CONTAINED IN THE RECEIVER ESTATE

As set forth herein, in this first month of the Receivership, the Receiver aggressively informed any known person who may have control of the Defendant's Assets, as defined in the Statutory Restraining Order (referred to herein as "Receivership Assets"), of the Court's Receivership Order and made demand for the turnover of Receivership Assets. With assistance from the Commodity Futures Trading Commission (the "Commission"), the U.S. Attorneys Office, and the FBI, as of July 7, 2008 the Receiver has recovered $19.7 million. These monies have been deposited into the Receivership account[2]. To date the Defendant George Hudgins ("Hudgins") has cooperated with the Receiver in locating and recovering Receivership Assets.

### A.    MONIES COLLECTED TO DATE

The source of the monies collected to date by the Receiver and deposited in the Receivership account is listed below:

1.    **Monies from Hudgins**:  Hudgins' attorney Charles Meadow turned over to the Receiver a check for $121,500, representing cash that Hudgins previously turned over to his attorney.

2.    **Refund of Deposit from Hawker Beechcraft Corporation:**  Prior to the Receivership Hudgins placed a purchase order with Hawker Beechcraft Corporation for a King Air jet aircraft.  To secure this purchase order, Hudgins paid a deposit of $531,400.  The Receiver, once appointed, terminated the purchase contract and negotiated a return of the full amount of the deposit, $531,400, from Hawker Beechcraft Corporation.

---

[2] The Receiver opened a money market account at a national financial institution in which the deposits are secured by United States Treasury Bonds.

3.    **Bank Accounts:**   Hudgins, individually, and in the name of 3737 Partners, maintained bank accounts at the following financial institutions, each of which turned over the balance remaining in the account as of the date the Court ordered the accounts frozen:

| | |
|---|---|
| Citizen's State Bank | $    2,423 |
| The Farmers' State Bank | $  14,212 |
| Bancorp South | $5,946,993 |
| HSBC | $1,842,933 |
| **TOTAL:** | **$7,806,561** |

4.    **Trading Accounts:**    As of the date of the Receivership, June 9, 2008, all of the trading accounts in the name of Hudgins or 3737 Partners were frozen and liquidated.   There were no trades pending.   The following institutions turned over the balance of the trading accounts to the Receiver, as follows:

| | |
|---|---|
| Options Express | $       166 |
| ETrade | $    2,526 |
| FC Stone, LLC | $    2,500 |
| Ameritrade | $   49,006 |
| Fortis Clearing Americas, LLC | $  294,238 |
| Interactive Brokers, LLC | $1,928,644 |
| Rosenthal Collins Group, LLC | $6,614,640 |
| **TOTAL:** | **$8,891,720** |

The Receiver is currently not aware of any other trading accounts containing Receivership Assets.

5.    **Recoveries from Children of Hudgins:**  Hudgins admitted he made financial gifts of $500,000 to each of his three sons, Jacob, Joel, and Josh.  In addition, Hudgins conceded to providing funds to Josh to use in establishing a trading business operated in College Station, Texas known as Kendal Green Capital.  To date, each of Hudgins' three sons has turned over the following sums to the Receiver:

| | |
|---|---|
| Jacob | $500,000 |
| Joel | $500,000 |
| Josh | $500,000 |
| Josh trading account at Interactive Brokers: | $881,856 |
| **TOTAL:** | **$2,381,856** |

In addition to the foregoing, Hudgins identified additional cash gifts to family members (including the wives of his sons, his grandsons, and sister) of at least $436,334.  The Receiver made demand upon these family members to turn over all Receivership Assets received by them from Hudgins, including, but not limited to the specific amounts identified by Hudgins.  To date those monies have not been recovered.  The Receiver will diligently pursue recovery of these sums, including filing such actions as may be necessary in the Receivership Court.  In addition, the Receiver believes that as an additional forensic accounting of the bank records is completed, even more sums of money may be traced to Hudgins' family members.

6.    **Other Recoveries:**  Prior to the Receivership, Hudgins leased a building he owns in Fairfield, Texas to his former accounting partner, Stuart Phillips.   Under this lease arrangement, Phillips paid all utilities, taxes, and insurance for the building and paid Hudgins $600 per month.  The Receiver agreed to continue to rent the building to Phillips under the same terms on a month to month basis until the building is sold.  Phillips paid the Receiver $600 for June rent and $600 for July rent.  Hudgins also receives nominal payments from XTO Energy for a mineral lease Hudgins executed with respect to certain mineral rights.  To date the Receiver has received mineral lease payments of $120.64.  Finally, Hudgins had insurance coverage on several automobiles he no longer owns.  Once the Receiver canceled such insurance, refunds of unearned premiums of $1,857 were received from Farmer's Insurance.

4

**B.**   **PENDING RECEIPTS OF MONIES**

Among his assets, Hudgins owned a seat on the Chicago Mercantile Exchange ("CME"), which he purchased with investor funds in April 2005 for approximately $305,000.   CME seats or memberships may only be sold through a bid process governed by the CME.   Since the appointment of the Receiver, the sales prices for CME seats have been dropping.  As a result, the Receiver, with the cooperation of Hudgins, accepted a bid for the sale of the CME seat for the sum of $1,100,000.   This money will be paid to the Receivership Estate when the CME completes the sale.

In addition, Hudgins funded the purchase of a CME seat for his son Josh.  The CME seat purchased by Josh is a limited seat distinct from the CME seat purchased by Hudgins.  Hudgins purchased the CME seat for Josh, an "IMM seat", with investor funds in July 2006 for approximately $360,000.   Through the cooperation of Hudgins and his son Josh, Josh's CME seat was sold through the CME for $670,000.  This money will be paid to the Receivership Estate when the CME completes the sale.

**C.**   **PERSONAL PROPERTY IDENTIFIED TO DATE**

Less than 48 hours after his appointment as Receiver, the Receiver and his staff were in Nacogdoches and prepared an inventory of the personal property included in the Receivership Estate.

1.   **Home Furnishings:**   An inventory prepared by the Receiver of the contents of Hudgins' home is listed on Exhibit A attached hereto and incorporated herein by reference.  In addition, shortly before the investment program operated by Hudgins was shut down by the Commission, Hudgins leased an apartment on Park Avenue in New York City and furnished the apartment with new furniture.  The New York apartment contains a queen bed, 2

plasma television sets, a couch, a table and chairs, and entertainment center.  The Receiver intends to sell the contents of Hudgins' home and New York apartment by public auction or private sale pursuant to procedures to be established by Court order.[3]

        2.     **Hudgins' office:**  Hudgins' office is in a separate building located on the same property as Hudgins' house and consists of:

> 4 desks
> 4 desk chairs
> 1 leather couch
> 2 filing cabinets
> Bookshelves
> Computers and monitors for four stations
> Fax machine/printer
> Generator
> Office Supplies
> 2 laptop computers (seized by the Receiver)

The contents of Hudgins' office will be sold, as with the contents of Hudgins' house, by public auction or private sale pursuant to procedures established by Court order.

        3.     **Equipment:**  Hudgins owns a Kubota diesel lawn mower, a Kubota tractor with front inloader, two trailers, and various tools.  Hudgins purchased the Kubota tractor with front inloader through Kubota for approximately $7,000 pursuant to 0% financing and monthly payments of $317.  In addition, Hudgins purchased a large fan unit that he intended to use at the hangar he was building, which cost approximately $5,000.  Also, Hudgins purchased a Fox ground power unit for approximately $13,000 that is used to cool airplanes.  Both the fan unit and the ground power unit are stored in a hangar at the airport.  The Receiver will sell the equipment by public auction or private sale pursuant to procedures established by Court order.

        4.     **Airplane:**  Hudgins owns free and clear of any liens a Beechcraft Baron airplane, N7236R.  The Receiver secured the airplane by locking the propellers and storing the

---

[3] On July 3, 2008 the Receiver filed with the Court a petition requesting the Court to approve procedures proposed by the Receiver for the sale of personal and real property.

airplane at a hangar at the airport in Nacogdoches. The original maintenance logs for the airplane have not been found, but the Receiver obtained a copy of the logs from Hudgins' pilot, Jerry Pitts. To date, several persons have expressed interest to the Receiver in purchasing the airplane. The Receiver will sell the airplane by public auction or private sale pursuant to procedures established by Court order.

     **5.**     **Automobiles:** Hudgins owns the following automobiles:

| | | | | |
|---|---|---|---|---|
| Chevrolet | Corvette | 1962 | Insured value | $80,000 |
| Chevrolet | Corvette | 1966 | Insured value | $90,000 |
| Chevrolet | Chevelle SS | 1965 | Insured value | $45,000 |
| Chevrolet | Bel Air | 1958 | Insured value | $15,000 |
| Chevrolet | Bel Air | 1954 | Insured value | $15,000 |
| Chevrolet | Corvette | 2007 | Purchase price | $80,645 |
| Chevrolet | Colorado PU | 2006 | No insured value | |
| GMC | Yukon Denali | 2004 | Purchase price | $35,000 |
| Yamaha All Terrain Vehicle | | | | |

Title to the foregoing automobiles has been signed over to the Receiver and the Receiver is now listed as an additional insured on the insurance policies insuring the vehicles. The Receiver is in possession of the keys to the automobiles[4]. The 1962 Corvette, the 1966 Corvette, and the 1965 Chevelle SS are antique classic automobiles that were purchased at a Barrett-Jackson Auction. The Receiver is attempting to sell these three automobiles at the next Barrett-Jackson Auction. The remainder of the automobiles will be sold by the Receiver by public auction or private sale pursuant to procedures established by Court order.

     **6.**     **Jewelry, Guns, and Antiquities:**     The Receiver obtained from Hudgins the Rolex watch Hudgins was wearing when he first met with the Receiver, which Hudgins purchased for approximately $7,000. In addition, the Receiver learned that Hudgins purchased at least 2 other Rolex watches as gifts for friends; a Tiffany necklace purchased for $5,000 given to

---

[4] Hudgins has permission from the Receiver to use the Chevrolet pick-up so long as Hudgins continues to cooperate with the Receiver and federal authorities in identifying and recovering Receivership Assets.

a woman in New York; and a $35,000 diamond ring given to a woman in St. Louis, Missouri. The Receiver demanded that each recipient of these gifts return the gifts or the cash equivalent of the gifts to the Receiver, and will continue his efforts to recover these assets.  If the gifts are not voluntarily returned to the Receiver, the Receiver intends to seek an order from the Receivership Court compelling the recipients of the gifts to turn over the gifts to the Receiver.

The Receiver took possession of six guns from Hudgins that were stored at Hudgins' residence and his cabin.  In addition, Hudgins turned over the to Receiver a Jim Bowie knife, two civil war canteens, and a civil war gun that Hudgins purchased at an antiques auction.  The jewelry, guns, and antiquities will be sold by the Receiver by public auction or private sale pursuant to procedures established by Court order.

**D.**     **REAL PROPERTY IDENTIFIED TO DATE**

According to the information provided by Hudgins and a search of public records by the Receiver, Hudgins has title to the following real property[5]:

**1.**     **3737 Skyline, Nacogdoches, Texas.**     In approximately September 2001 Hudgins purchased the house he has been living in, which sits on nearly 4 acres of property.  The house has 3 bedrooms, a pool apartment, 3 bathrooms, and a swimming pool.  Hudgins subsequently constructed a separate office building on the property, which includes 2 rooms, a restroom, and a garage.  The Receiver retained Charles Pool Realty in Nacogdoches to list the property for sale and the property will be sold pursuant to procedures to be established by Court order.  Pursuant to the federal rules governing receiverships the Receiver is retaining three appraisers to determine the fair market value of the property.

---

[5] To protect the interests of the receivership, the Receiver filed a *lis pendens* in the deed records of each county in which the property owned by Hudgins is located.

2.      **Lots 19 and 20 of Raguet Street development in Nacogdoches, Texas.**
Hudgins purchased for $50,000 each, two lots in a new development in Nacogdoches.  The lots are side by side and have water, sewer, and utilities available.  The new development is for large, expensive homes.  The Receiver retained Charles Pool Realty in Nacogdoches to list the property for sale and the property will be sold pursuant to procedures to be established by Court order. Pursuant to the federal rules governing receiverships the Receiver is retaining three appraisers to determine the fair market value of the property.

3.      **Property in Cushing, Texas.**  Hudgins owns a tract of undeveloped timber land consisting of 13.505 acres near Cushing, Texas.  The property was recently harvested for timber.  The Receiver retained Charles Pool Realty in Nacogdoches to list the property for sale and the property will be sold pursuant to procedures to be established by Court order.  Pursuant to the federal rules governing receiverships the Receiver is retaining three appraisers to determine the fair market value of the property.

4.      **The River Property.**   In May 2007 Hudgins purchased 269.15 acres of property approximately 20 miles outside of Nacogdoches, Texas that sits along the Angelina river and contains a number of ponds.  Hudgins constructed a new single room cabin on the property that features an outdoor patio that leads to a large pond.  The property is ideal for hunting or fishing.  Hudgins also constructed a separate garage to store a Yamaha all-terrain vehicle that is used to travel across the property.  The Receiver retained Charles Pool Realty in Nacogdoches to list the property for sale and the property will be sold pursuant to procedures to be established by Court order.  Pursuant to the federal rules governing receiverships the Receiver is retaining three appraisers to determine the fair market value of the property.

5.    **Fairfield Property.**   In 1999 Hudgins purchased an office building in Fairfield, Texas located at 552 East Commerce, Fairfield, Texas.   Hudgins has been leasing the office building to his former accounting partner, Stuart Phillips.  Mr. Phillips has been paying Hudgins monthly rent of $600, in addition to paying for the taxes, insurance, and utilities of the building. The Receiver entered into an agreement with Mr. Phillips allowing him to continue to rent the office building for the same terms.  Mr. Phillips recently paid the Receiver $600 for June's rent and $600 for July's rent.  Although the property is currently being leased, the Receiver intends to sell the property.  The Receiver is in the process of retaining Blake Robinson in Fairfield, Texas to list the property for sale and the property will be sold pursuant to procedures to be established by Court order.  Pursuant to the federal rules governing receiverships the Receiver is retaining three appraisers to determine the fair market value of the property.

6.    **Airport Hangar.**   In the fall of 2007, Hudgins began construction of a hangar at the Nacogdoches airport to store the King Air Hudgins was planning on purchasing.   Hudgins entered into a lease with the City of Nacogdoches to allow construction of the hangar at the airport.   According to the Receiver's review of bank records, it appears that Hudgins used approximately $168,000 to pay for construction of the hangar.  The hangar is not yet complete and at least $10,000 in bills remains outstanding.  Although the hangar is secure, concrete still needs to be laid between the hangar and the taxiway of the airport.  The Receiver met with the attorney for the City of Nacogdoches regarding the hangar and obtained a copy of Hudgins' lease with the City.   Under Hudgins' lease with the City, the City has a right of first refusal for purchase of the hangar.  In addition, the Receiver is aware of at least three persons who have expressed an interest in purchasing the hangar.  For this reason, the Receiver is not listing the hangar for sale with a broker.  Pursuant to the federal rules governing receiverships, the Receiver

will have the hangar appraised by three appraisers and any sale of the hangar will be pursuant to procedures established by the Court.

### E.    MINERALS

Hudgins and his attorney provided the Receiver with various mineral deeds indicating that Hudgins owns a partial interest, together with Glenn Jones of Centerville, Texas, and Steven Torno, of Centerville, Texas in minerals in Leon County, Texas.  Some of those mineral interests have been leased to XTO Energy and XTO Energy is making monthly lease payments.  The Receiver received a monthly lease payment from XTO Energy.  In addition, XTO Energy expressed an interest in leasing additional minerals interests of Hudgins.  The Receiver will have the mineral interests appraised and sold pursuant to procedures established by the Court.

### F.    NOTES RECEIVABLE

According to Hudgins and the records seized from Hudgins' office, Hudgins made loans to the following persons pursuant to promissory notes that are an asset of Hudgins and now belong to the Receivership Estate:

1.    Joseph and Tammie Patterson borrowed $46,000 from Hudgins on May 5, 2006 at 9% interest.   They are current in their monthly payments ($466.56) and they have been advised to make all future payments to the Receiver.   It appears that previous monthly payments were made to Josh Hudgins instead of Hudgins.  To the extent Josh Hudgins received any of these payments, the Receiver will make demand upon Josh Hudgins to turn over to the receivership such monies.

2.    John and Vickie Boyd borrowed $40,000 from Hudgins to help finance the purchase of their house.  The Boyds signed a promissory note on September 1, 2005 for the loan at 5% annual interest, with monthly payments due of $424.26.   On two different occasions

Hudgins forgave the principal owing on the note. The forgiveness of the amount owed on the note constituted a gift. The Receiver has made demand upon the Boyds to repay the full amount of the note.

3.      Beginning in September, 2004 Hudgins began loaning $750 per month to Dayla Randall to assist her with tuition for nursing school. She was required to pay interest of 5% on the monies borrowed. Hudgins stopped making the monthly advances more than a year ago. The Receiver made demand upon Ms. Randall to repay the amounts she received from Hudgins. Ms. Randall claims she has no assets and is unable to pay anything back to the receivership estate. The Receiver is attempting to corroborate her financial condition.

4.      On July 10, 2007, Hudgins loaned Patsy Miller $25,000 at 6% interest. Ms. Miller is current in her monthly payments of $277.55, and has been advised by the Receiver to make all future monthly payments to the receivership.

5.      In the Spring of 2008, Hudgins loaned Tina Trammell $15,000. Ms. Trammell was advised by the Receiver to make all future monthly loan payments to the receivership. Ms. Trammell and the Receiver are negotiating the amount of her monthly payment to the receivership estate.

6.      On February 19, 2008, Hudgins loaned James Walkin $115,000. A promissory note was not executed. Hudgins claims Walkin repaid $100,000 of the loan, but still owes $15,000 from the original loan, plus an additional $30,000 from subsequent monies Hudgins loaned Walkin. The Receiver made demand upon Walkin to account for all monies received from Hudgins and all monies paid to Hudgins to determine the liability, if any, of Walkin to the receivership estate.

G.     INSURANCE POLICIES

Hudgins owns a number of whole life or universal life insurance policies with New York Life and Mass Mutual.  In addition, Hudgins purchased a number of life insurance policies for his family members.  The approximate[6] net cash value of the New York Life policies is $60,000. The Receiver provided the General Counsel of New York Life with a copy of the Receivership Order and made demand upon New York Life to surrender the cash value of the policies to the Receiver, and New York Life is cooperating in liquidating these policies.  The Receiver also requested Mass Mutual to turn over to the Receiver the cash values of all insurance policies in Hudgins' name, but does not yet know the surrender value of those polices.

H.     DEPOSITS

In or about May 8, 2008, Hudgins posted a security deposit of approximately $6,000 for the lease of an apartment in New York City.  Since Hudgins was placed in receivership, no lease payments have been made on the apartment.  The Receiver intends to terminate and surrender the lease. As such, it is anticipated that the security deposit will not be returned by the Lessor.

Prior to the receivership Hudgins purchased a partial interest in the use of a Lear jet through Marquis Jet Service.  As of the date of the receivership, Hudgins still had approximately 10 hours of time that had not been used on the Lear jet.   The Receiver made demand upon Marquis Jet Service to return to the receivership the money-equivalent of the unused time on the Lear Jet, which the Receiver estimates to be approximately $55,000.  The Receiver is currently in negotiations with Marquis Jet regarding the return of the cash equivalent of this unused time.

I.     CLAIMS

Hudgins claims that Doug Newman, a trader Hudgins did business with as part of the Chicago Mercantile Exchange, owes Hudgins $70,000.  Hudgins began the process of arbitration

---

[6] Two of the policies are encumbered by loans totaling $92,342.

mandated by the Chicago Mercantile Exchange to compel a return of the $70,000 from Newman. The Receiver made demand upon Newman for return of the $70,000, and Newman agreed to provide the Receiver documents he claims demonstrate re-payment of the amounts owed.  To date the monies have not been returned.  Because of the exclusive jurisdiction of the Receivership Court for matters pertaining to the receivership, the Receiver intends to litigate the claim against Newman, if necessary, before the Receivership Court instead of through CME arbitration.

## II.

## OTHER SOURCES OF RECOVERY FOR THE RECEIVERSHIP

Based on the information obtained to date, in addition to Hudgins' assets, as identified above, the Receiver intends to pursue the following sources of recovery:

### A.     RECOVERY OF COMMISSIONS

Based on the information obtained by the Receiver, it is the Receiver's opinion Hudgins was operating his investment pool as a Ponzi scheme.  Monies invested with Hudgins were not earning a profit, but instead were either lost in trading, used by Hudgins for his personal gain, or for gifts to family or friends.  Moreover, false financial information was provided to investors to encourage them to continue investing with Hudgins.  As such, monies paid out to investors originated from other investors' monies, and not from legitimate profits earned by the investors in trading.  The law is well established that a Receiver may recover from brokers the commissions they received from a Ponzi scheme.  *Warfield v. Byron,* 436 F.3d 551, 560 (5th Cir. 2006).

To date, with Hudgins' assistance, the Receiver has identified the following individuals who received commissions from Hudgins:  Daryl Sparks, Steve Cheek, Steve Calvert, Lon

Mathews, Joe Still, Jill Still, Rick Still, and Linda Still.  The Receiver served each of these recipients of commissions with a demand letter to turnover to the Receiver commissions each received.  The Receiver anticipates that as additional forensic accounting is completed, he will be able to identify additional persons who received commissions.  The Receiver intends to file a lawsuit in the Receivership Court against those recipients of commissions who refuse or fail to resolve the claim with the Receiver.

B.      **RECOVERY OF FALSE PROFITS**

Because the Hudgins investment program was, in the opinion of the Receiver, operated as a Ponzi scheme, the profits paid to investors were not legitimate, but instead represented monies from other investors.  As such, false profits are required to be turned over to a Receiver.  *Scholes v. Lehman*, 56 F.3d 750, 757-58 (7th Cir.), *cert. denied, sub. nom, African Enter., Inc. v. Scholes*, 516 U.S. 1028 (1995); *In re United Energy Corp.*, 944 F.2d 589, 596 (9th Cir. 1991).

Based on the information provided by Hudgins, and the initial review of bank records, it appears that more than 25 persons received false profits from the program that must be turned over to the Receiver.  The most significant recipients of false profits appear to be Glenn Burt (more than $1 million), Bobby Lide (more than $1 million), Larry Schmidt (more than $600,000), and Joe Cheek (more than $300,000).  Indeed, the Receiver is aware of at least two bank accounts in the name of Glenn Burt, his wife, and Vicki Boyd containing more than $900,000 in Receivership Assets that have been frozen by the Court's Order.  The Burts executed a consent directing the turnover of these funds, and the Receiver will continue his efforts to obtain a consent from Ms. Boyd to have the monies in these accounts turned over to the receivership.

To the extent the recipients of false profits from the program do not voluntarily resolve the Receiver's claim for a return of the false profits, the Receiver will file an action against them in the Receivership Court.

**D.      RECOVERY OF GIFTS**

To the extent Hudgins made a gift or conveyance of monies to another person and did not receive reasonably equivalent value in exchange, the Receiver is entitled to recover such gifts as a fraudulent conveyance. *Scholes,* 56 F.3d at 757-58. Gifts by Hudgins to family members were previously discussed in this report and the Receiver will aggressively pursue recovery of such gifts. Gifts of jewelry were also previously addressed in this report and the Receiver will also pursue recovery of the jewelry or the cash equivalent of the jewelry. In addition, Hudgins made significant financial gifts to third parties for no reasonably equivalent value, as follows:

| | |
|---|---|
| Wendy Silette of Naples, Florida | Gift of $372,500 |
| Melinda Dawn Barnes in Boise, Idaho | Gift of $10,000 |
| Kelly Wyand in Vermont | Gift of more than $5,000 |
| Elaine Drussell in Chicago, Illinois | Gift of $5,000 |
| Church of Christ | Gifts exceeding $80,000 |

These gifts represent investor funds that must be returned to the Receiver for distribution to the investors. The Receiver will actively pursue recovery of these gifts and seek the assistance of the Court, as necessary.

**E.      RECOVERY OF DAMAGES**

The Receiver is investigating possible causes of action that may be held by the Receiver against those trading institutions that did business with Hudgins.

16

## III.

## ACCOUNT VALUES FOR ACCOUNTS OF POOL PARTICIPANTS

According to information obtained by the Receiver, the account values for pool participants provided to investors by Hudgins were false. The account values were artificially inflated to show gains when in fact there were losses, or the money was used by Hudgins for his own purposes and not trading. The true value of each investor's account cannot be determined until the forensic accounting of thousands of bank records is completed. That process is underway, but is not complete.

Hudgins prepared a report of what he considers to be the true value of each investor's account. This report was prepared for the benefit of the Receiver and provided to the FBI. The report identifies the gross investment and net balance owing to each investor. A true and correct copy of the report is attached hereto as Exhibit B. Until the Receiver completes the forensic accounting of the bank records the Receiver cannot attest to the accuracy of this report. The report shows gross investments of $92 million, a net owing to investors of $74.8 million, and overpayments of false profits to certain persons totaling $4.4 million.

On July 3, 2008, the Receiver filed with the Court a petition requesting the Court to establish a procedure for the adjudication of investors' claims. Pursuant to the procedure proposed by the Receiver, investors will file a claim with the Receiver for the amount of money they believe they have lost. If the Court approves the petition, claims will be due to the Receiver by or before September 1, 2008. This will give investors and opportunity to provide support for their accounting of the total money they invested with Hudgins, offset by the monies they received from Hudgins. The Receiver will compare each claim to the forensic accounting he has conducted and make a recommendation to the Court as to whether the Receiver agrees with the

claim that has been submitted, or believes the claim should adjusted.  Pursuant to the procedures suggested to the Court, the investors will have an opportunity to review the Receiver's recommendation regarding their claim and if they object to the Receiver's recommendation, they may submit their objection to the Court for consideration.  The Court will make a final determination of the amount of each investor's claim and that amount will be used by the Receiver in making pro rata distributions of the Receivership Assets to the approved investors.

## IV.

## OTHER ACTIVITIES OF THE RECEIVER

### A.      Establishment of National Jurisdiction for Recovery of Receivership Assets

Pursuant to 28 U.S.C. § 754,[7] within ten days of his appointment, the Receiver filed the *Complaint* and the *Receivership Order* in more than 33 districts in which Receivership Assets or Receivership Records may exist.  The Receiver filed the pleadings in the districts in which investors or recipients of investor funds were known to reside.

### B.      Filing of Receiver's Bond

The *Receivership Order* further directs the Receiver to file a bond in the amount of Ten Thousand Dollars ($10,000.00).  *Receivership Order*, § II, ¶ 13.  On June 10, 2008, the Receiver filed such a bond, which was issued on June 9, 2008 by Liberty Mutual Insurance Company, as surety.

### C.      Establishment of Receivership Website

The Receiver established a website, www.hudginsreceivership.com, to quickly, inexpensively, and broadly convey information regarding the Receivership. The Receiver will

---

[7] A "receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district."  28 U.S.C. § 754.

periodically update the website as the Receivership progresses, including posting this report on the website.  Photographs or a description of certain property to be sold by the Receiver during the receivership will also be posted on the website.

**D.      Employment of Professionals**

The *Receivership Order* authorizes the Receiver to "choose, engage and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order." *Receivership Order*, § II, ¶ 7i.  Accordingly, upon being informed of his appointment as Receiver, the Receiver engaged the services of the law firm of Scheef & Stone, L.L.P., of which the Receiver is a partner, to serve as general counsel to the Receiver.  Scheef & Stone, L.L.P. has extensive experience in federal receiverships.  The Receiver engaged the services of the accounting firm of Warfield & Company in Scottsdale, Arizona.  Lawrence Warfield, CPA, of Warfield & Company has extensive experience in forensic accounting and has served as a receiver himself in numerous cases.  The Receiver also engaged the services of A & A Investigations.  Lee Atwood of A & A Investigations is a former Internal Revenue Service agent and retired from the United States Customs Service.  He has extensive experience in identifying and locating assets.

**E.      Continued Pursuit of Leads**

A number of investors have provided the Receiver with leads regarding the possible location of additional Receivership Assets.  These leads include, but are not limited to, the possibility of monies being hidden offshore, Hudgins' use of a trader in Ireland, and Hudgins' business dealings with three persons in New York.  Hudgins denies having any money hidden offshore, identified the trader in Ireland as a contractor with one of the United States trading

houses, and identified three persons in New York with whom he conducted trades.  The Receiver

will continue investigating these leads, and other leads provided to the Receiver.

Respectfully submitted July 8, 2008.

RECEIVER KELLY M. CRAWFORD

*/s/  Kelly M. Crawford*
Kelly M. Crawford, Receiver
State Bar No. 05030700
5956 Sherry Lane, Suite 1400
Dallas, Texas 75225
Tele:  214/706-4200
Fax:  214/706-4242

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 8th, 2008 I electronically filed the foregoing

document with the clerk of the U.S. District Court, Eastern District of Texas, using the electronic

case filing system of the court.  The electronic case filing system sent a "Notice of Electronic

Filing" to the following attorneys of record:

Kathleen M. Banar
Kim G. Bruno
US Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, NW,
Washington, DC 20581

Charlene C. Koonce
Scheef & Stone, L.L.P.
5956 Sherry Lane, Suite 1400
Dallas, Texas 75225
*Attorney for Receiver*

Charles M. Meadows, Jr.
Meadows, Collier, Reed, Cousins & Blau LLP
901 Main Street, Suite 3700
Dallas, TX 75202
*Attorney for George D. Hudgins*

Bryan T. Forman
Forman Law Firm, P.C.
117 E. Houston Street
Tyler, Texas 75702
*Attorney for Jeff Badders*

/s/  Kelly M. Crawford
KELLY M. CRAWFORD

<u>**INVENTORY OF HUDGINS' HOME**</u>                                June 11, 2008

**Kitchen**
Panty closet with food
Kenmore refrigerator
KitchenAid trash compactor
GE microwave
Island with built in old KitchenAid cook top
KitchenAid dishwasher
KitchenAid (new) built-in cooktop
Area rug (burgundy boarder w/fruit)
Sharp flat screen computer screen
Very large hard drive (no mfg. info visible)
Large framed print of parrot
Closet with linens, vases, and misc. small kitchen appliances & baskets
Blue Haven electronic pool control mounted on wall
Empty Rolex box found in cabinet
Mexican Visa found on cabinet
Misc. notes re: bank account info on cabinet
Dark wooden table with six chairs


**Small powder-room/toilet near kitchen**
Small framed print of bathtub

**Laundry Room/Utility**
New Kenmore 80 series dryer
New-ish Kenmore Elite washer
Old ironing board

**Sitting area near kitchen**
Small antique wooden desk and matching chair
Small antique wooden curio cabinets (2)
Green upholstered lazy boy styled chair
Old fashioned cast iron cook stove used as plant stand
Wood Barrister's book case (probably antique)
Misc. books
Framed Frederick Douglas portrait
Medium sized area rug

**Living Room**
Large built in shelves w/photos, and board games
Mounted deer heads/antlers (3)
Matching wooden side tables (3)
3 brass table lamps
Matching couch and 2 large upholstered chairs with matching upholstered footstools and pillows

1


EXHIBIT
A

Red leather massage chair (lazy boy style0
Modern style area rug (black and tan)
TX landscape framed print
Very large Sony flatscreen TV
Tiivo HR 10-250
Sony Precision Drive 2/MP3 playback DVD player
Harmon/Kardon AVR 500 receiver
3 small/medium sized infinity speakers
Small round wooden decorate table
Large gemstone globe in stand
Antique "39" rifle
Misc. books & family photos
Toshiba laptop
2 smaller area rugs
1 large wicker basket used as plant stand
2 wooden TV dinner trays on stands
6 very large (6') plants
Small brass sculpture of children playing (no artists' signature)
$500 poker chip
$25 poker chip

**Entry**
Small Persian style area rug (tan and brown)
1 very large plant (6')

**Hallway/Closets cupboards**
Martin Figlinski signed garden print (approx. 3x 3 )
Storage closet with pillows
Old RCA receiver
Erickson (empty) box
Misc. empty boxes
Boxes with extra bedding
1 "Ricardo" small (carry-on size) red suitcase
2 large black suitcases
Leather satchel
Clothes
2 very large 4' high Polk audio floor speakers
ALC "boom box" for cassette
Harmon/Kardon receiver
2 table height lamp stands (no shades)
Natural flowers framed print (18x20)
Old photos
Large framed print of flower (3' x 3' approx)
RCA Receiver/cable receiver box
Sleeping bag
Extra leaf for kitchen table

4 small framed floral prints
Disk changer
RCA speakers (2 small)
Clothes
Electric massage machine (small)
2 Vacuums (Hoover)
Blankets
Second sleeping bag

Framed cross-stitch print on wall

**Nail/photo hook in hall wall, but nothing hanging on hook**
**Battery removed from smoke alarm in hallway**

**1st Bedroom**
Queen wooden 4-poster bed,
Matching wooden nightstands (2)
2 night matching table lamps
Matching wooden chest of drawers
Small particle board computer table
Wicker chair
12-14" Zenith TV
Computer disks, mouse, and misc. computer accessories in drawer
Panasonic boom box & misc. clothes (in closet)

**2nd Bedroom**
Grove Park style oak Queen bed
Oak rocking chair
Cast iron floor lamp w/pine cone motif
Brass floor lamp (in closet)
Small green and oak table/desk
2 matching green/oak stools
Antique style Coca Cola phone
Small table lamp

**Hall Bath**
Linens
Built tub/shower combo with sliding glass doors
Mirrored wall above basin
Keys found in drawer

**Master Bedroom**
Berber carpet
King-sized wooden bed frame
Leather easy chair (black)
Sanyo TV (approx. 22")

2 Grove Park styled oak night stands
Desk –
       Shotgun shells in drawer
       Computer printer & hard drive (small)
       Ralph Lauren sunglasses in case and box
       Wireless Netgear router
Framed Forest Gump movie poster
Small black leather desk chair
Small wooden TV table
Wooden Barrister's book case and misc. books
Wooden Butler's chair/coat rack
Tiffany's certificate re: diamond purchase

**Master Closet**
 3 large racks of clothes
       1 Beechcraft bomber leather jacket
       Approx. 11 business suits
30 pairs loafers
5 sneakers
20 pairs cowboy boots
(1) 1837 Waters US Flintlock black powder handgun in leather case (price tag says $1,000)
Wooden gun rack with glass doors
       1 Woodchucker 22 rifle – WC7041
       Barrel for Browning 12 gauge (Belgian)
       Browning 2000 semi automatic 12g (Belgian) 42415C47
       Crossman 20 caliber air rifle  N00702029
       Winchester 264 WinMag bolt action rifle w/3x9 Redfield scope G1457618
       Browning Citori over/under 20g (Japan) 10777PZ163
       Weatherby quick release scope 30/06 bolt action V04297

2 "Paul Harris Fellow" medals
Old family photos/report cards
1885 family Bible

**Master Bathroom**
Prescription and nonprescription drugs
Small white bead board chest
Jacuzzi tub
Walk-in shower (glass doors)
Linens

**Garage**
STIHL weed eater
Black and Decker hedge cutter
3 large ice chests
2 folding chairs

4

Shakespeare fishing reel
Timberline bike
Crosley Shelvador refrigerator/freezer

**Pool Apartment**
Sanyo (24" approx.) TV
Wireless router
Black lamp stand, table lamp
Black metal full-sized bed
Small black night-table (wooden)
"Texas" motif bench
Oak coffee table with water marks

**Small bathroom in pool apartment**
Shower/tub combo
All cabinets empty

**Pool area**
Basketball hoop for pool
Broken pool sweep
Love seat/wooden swing
Plastic and metal patio table
4 matching chairs (fabric and metal)
2 reclining lounge chairs
4 plastic chairs
Metal framed clock/thermometer
Child-sized picnic table- wooden

Fenced dog kennel with concrete floor
Free standing hammock

Case 6:08-cv-00187   Document 110-2   Filed 07/08/08   Page 1 of 10

| Name | Gross Investment | Net Balance | Overpayments | Gross Investment | Net Balance |
|---|---|---|---|---|---|
| AAA Counseling | $ | $ | | | |
| Adams, Steve | $ 119,684.00 | $ 119,684.00 | | | |
| Ammons, Mike | $ 382,000.00 | | $ 49,300.00 | | |
| Ammons, Mike IRA | $ 60,000.00 | | | | |
| Ammons, Rose | $ 118,640.17 | $ 118,640.17 | | | |
| Ashcroft & McGrede Regular | $ 98,000.13 | $ 85,232.13 | | | |
| Ashcroft & McGrede Regular | $ 27,000.00 | $ 27,000.00 | | | |
| Ashcroft & McGrede Regular | $ 52,000.00 | $ 52,000.00 | | | |
| Ashcroft Family Trust | $ 905,000.00 | $ 905,000.00 | | | |
| Ashcroft Five Star Distributors, Inc. | $ 171,723.50 | $ 171,723.50 | | | |
| Ashcroft Sister's College Fund | $ 97,000.00 | $ 85,000.00 | | | |
| Ashcroft, Frank Regular | $ 200,000.00 | $ 845.84 | | | |
| Ashcroft, Holland, Clark Regular | $ 31,213.20 | $ 31,213.20 | | | |
| Baskins, Billy & Kathy Regular | $ 200,000.00 | $ 200,000.00 | | | |
| Atherton, Brian J. IRA-Roth | $ 23,990.45 | $ 23,990.45 | | | |
| Atherton, Brian Regular | $ 1,000.00 | $ 1,000.00 | | | |
| Atherton, Normah IRA | $ 365,783.76 | $ 33,783.76 | | | |
| Atherton, Normah IRA-Roth | $ 131,083.20 | $ 66,083.20 | | | |
| Atherton, Normah Regular | $ 31,200.00 | $ 31,200.00 | | | |
| Badders, Jeff IRA | $ 671,996.19 | $ 671,996.19 | | | |
| Badders, Jeff Regular | $ 4,083,929.75 | $ 4,083,929.75 | | | |
| Bagwell, Mark & Jeanetet Regular | $ 206,000.00 | $ 191,000.00 | | | |
| Beck, Karen IRA | $ 94,065.90 | $ 94,065.90 | | | |
| Beck, Karen Regular | $ 474,000.00 | | $ (88,019.00) | | |
| Beck, Ryan Regular | $ 7,500.00 | $ 635.00 | | | |
| Becker, Jane R. IRA | $ 168,760.89 | $ 163,760.89 | | | |
| Becker, John T. IRA | $ 545,801.38 | $ 545,801.38 | | | |
| Bellesti, Joseph C. Regular | $ 100,000.00 | $ 100,000.00 | | | |
| Benchoff Family Trust | $ 140,000.00 | $ 140,000.00 | | | |
| Benchoff, E. McAlister IRA-SEP | $ 263,190.20 | $ 263,190.20 | | | |
| BFA Enterprises, Inc. Regular | $ 137,800.00 | $ 127,800.00 | | | |
| Blacksher, Mellissa | $ 50,000.00 | $ 42,000.00 | | | |
| Boulware, Clifton IRA | $ 11,215.15 | $ 11,215.15 | | | |
| Boulware, Clifton Regular | $ 271,500.00 | $ 126,101.96 | | | |
| Boulware, George Regular | $ 21,500.00 | $ 21,500.00 | | | |
| Boulware, Melinda IRA | $ 11,215.15 | $ 11,215.15 | | | |
| Boulware, Patty Regular | $ 5,000.00 | $ 5,000.00 | | | |
| Brackenn, Terry | $ 50,000.00 | $ 50,000.00 | | | |
| Brewster, Russell S. IRA | $ 341,617.16 | $ 341,617.16 | | | |
| Brewster, Russell S. Regular | $ 550,000.00 | $ 550,000.00 | | | |
| Burt, Glenn Regular (1) | $ 1,617,316.66 | | $ (1,964,793.42) | | |
| Burt, Glenn Regular (2) | $ 686,420.83 | $ 371,670.83 | | | |
| Bush, Tom Regular | $ 239,000.00 | $ 239,000.00 | | | |
| BWD Enterprises, LLC | $ 350,000.00 | $ 350,000.00 | | | |
| Cain, Latricia B. SEP | $ 1,427.00 | $ 1,427.00 | | | |
| Calvert, Geneva IRA | $ 13,094.84 | $ 13,094.84 | | | |

EXHIBIT

B

| Name | Gross Investment | Net Balance | Overpayments | Gross Investment | Net Balance |
|---|---|---|---|---|---|
| Calvert, Gina IRA | $ 12,000.00 | $ 12,000.00 | | | |
| Calvert, Steve IRA | $ 12,000.00 | $ 12,000.00 | | | |
| Canfield, Benjamin S. IRA | $ 19,223.84 | $ 19,223.84 | | | |
| Canfield, Benjamin S. Regular | $ 106,501.44 | $ 86,701.44 | | | |
| Canfield, Jonathan W. IRA | $ 30,251.75 | $ 30,251.75 | | | |
| Canfield, Jonathan W. Regular | $ 189,300.68 | $ 162,800.68 | | | |
| Canfield, Michael E. Regular | $ 69,500.00 | $ 69,500.00 | | | |
| Canfield, Ronald IRA | $ 705,862.30 | $ 705,862.30 | | | |
| Canfield, Ronald Regular | $ 1,205,000.00 | $ 274,100.00 | | | |
| Canfield, Winton J. Regular | $ 25,000.00 | $ 25,000.00 | | | |
| Canfield, Barbara J. IRA | $ 30,829.90 | $ 30,829.90 | | | |
| Canfield, Barbara J. Regular | $ 832,500.00 | $ 603,500.00 | | | |
| Canfield, Ronfield Cust. For Alexis Sahar Canfield | $ 29,014.00 | $ 29,014.00 | | | |
| Canfield, Ronfield Cust. For Ashley Lynn Canfield | | | | | |
| Canfield, Ronfield Investments | $ 2,513,100.00 | $ 2,178,000.00 | | | |
| Canfield, Sarah IRA | $ 59,149.90 | $ 59,149.90 | | | |
| Carey, James IRA | $ 4,000.00 | $ 4,000.00 | | | |
| Carey, James IRA-Roth | $ 54,216.34 | $ 54,216.34 | | | |
| Carey, James SEP | $ 4,689.53 | $ 4,689.53 | | | |
| Carlisle, Charles Regular | $ 100,000.00 | $ 100,000.00 | | | |
| Cheek, Carroll & Donna Regular | $ 200,000.00 | $ 200,000.00 | | | |
| Cheek, Glenda IRA | $ 3,000.00 | $ 3,000.00 | | | |
| Cheek, Joe & Margaret Regular | $ 281,119.68 | | $ (367,971.32) | | |
| Cheek, Steven IRA | $ 3,000.00 | $ 3,000.00 | | | |
| Christopher, Dwain Regular | $ 117,000.00 | $ 117,000.00 | | | |
| Cole, Monte Regular | $ 100,000.00 | $ 100,000.00 | | | |
| Cookenboo, Eugene W. Regular | $ 100,000.00 | $ 100,000.00 | | | |
| Cornelius, Alvin Regular | $ 100,000.00 | $ 100,000.00 | | | |
| Cornelius, Kimberly S. IRA | $ 38,182.92 | $ 38,182.92 | | | |
| Cornelius, Lea IRA | $ 94,669.98 | $ 94,669.98 | | | |
| Cornelius, Phil IRA | $ 48,747.84 | $ 48,747.84 | | | |
| Cornelius, Phil Regular | $ 650,000.00 | $ 650,000.00 | | | |
| Cranford, Bobby Regular | $ 112,000.00 | $ 112,000.00 | | | |
| Crisp, Angie Regular | $ 315,778.96 | $ 294,778.96 | | | |
| Crouse, Susan S. IRA | $ 405.84 | $ 405.84 | | | |
| Crouse, W.H. Investments Ltd. | $ 400,000.00 | | $ (168,944.02) | | |
| Crouse, William H., Jr. IRA | $ 556,638.21 | $ 556,638.21 | | | |
| Dance Furniture & Appliance Regular | $ 222,937.39 | $ 222,937.39 | | | |
| Dance, Barbara Regular | $ 309,500.00 | $ 100,000.00 | | | |
| Dance, Brent IRA | $ 99,899.96 | $ 99,899.96 | | | |
| Dance, Brent Regular | $ 430,000.00 | $ 430,000.00 | | | |
| Dance, Carlton Spence | $ 46,392.76 | $ 46,392.76 | | | |
| Dance, Carlton Spence IRA | $ 95,691.80 | $ 71,299.04 | | | |
| Dance, Carlton Spence IRA-Roth | $ 342,432.76 | $ 270,432.76 | | | |
| Dance, Carlton Spence Regular | | | | | |
| Dance, Sammy D. IRA | $ 158,382.08 | $ 158,382.08 | | | |

6:08-cv-00187-LED   Document 40-2   Filed 07/08/08   Page 3 of 10

| Name | Gross Investment | Net Balance | Overpayments | Gross Investment | Net Balance |
|---|---|---|---|---|---|
| Dance, Sammy D. Regular | $ 396,500.00 | $ 396,500.00 | | | |
| Dance, Sammy D. Regular SEP | $ 64,858.60 | $ 64,858.60 | | | |
| Dance, Sammy J. IRA-Roth | $ 6,829.65 | $ 6,829.65 | | | |
| Dance, Sammy J. Regular | $ 93,772.63 | $ 91,372.63 | | | |
| Dance, Sierra | $ 30,000.00 | $ 30,000.00 | | | |
| Davis, Juliane Regular | $ 29,750.00 | $ 30,000.00 | | | |
| Davis, Paul T. Regular | $ 29,750.00 | $ 29,750.00 | | | |
| Day, Galen & Maurine Regular | $ 400,000.00 | $ 400,000.00 | | | |
| Day, Rick & Judy Regular | $ 275,000.00 | $ 275,000.00 | | | |
| DM Financial, LLC | $ 190,000.00 | $ 190,000.00 | | | |
| Dolan, Michael T. Regular | $ 50,000.00 | $ 30,000.00 | | | |
| Dolan, Pat & Mock Regular | $ 950,000.00 | $ 950,000.00 | | | |
| Dolan, Patrick IRA | $ 144,396.78 | $ 144,396.78 | | | |
| Dolan, Patrick IRA-Roth | $ 9,751.42 | $ 9,751.42 | | | |
| Dolan, Patrick Regular | $ 150,000.00 | $ 80,371.33 | | | |
| Dorrance, Linda Regular | $ 500,000.00 | $ 500,000.00 | | | |
| Drewery Construction Regular | $ 500,000.00 | $ 500,000.00 | | | |
| Drewery Tree Service Regular | $ 25,000.00 | $ 25,000.00 | | | |
| Drewery, Keith & Traci Regular | $ 19,010.00 | $ 19,010.00 | | | |
| DuPerier, Harold T. III Regular | $ 1,000,000.00 | $ 1,000,000.00 | | | |
| Ellis Timber, Inc. Regular | $ 500,000.00 | $ | (7,779.44) | | |
| Ellis, Joyce L. IRA | $ 33,397.48 | $ 33,397.48 | | | |
| Ellis, Larry & Joyce Regular | $ 1,592,127.80 | $ 1,592,127.80 | | | |
| Ellis, Larry IRA | $ 420,334.99 | $ 420,334.99 | | | |
| Engram, Bryan H. Regular | $ 730,000.00 | $ 730,000.00 | | | |
| Faber, Joy E. Regular | $ 16,550.00 | $ 16,550.00 | | | |
| Fancher, Curtis IRA | $ 11,970.84 | $ 11,970.84 | | | |
| Fancher, Curtis Cust. for Kathryn L. Fancher | $ 11,960.06 | $ 11,960.06 | | | |
| Fancher, Curtis Cust. for Taylor R. Fancher | $ 132,818.24 | $ 128,418.24 | | | |
| Fancher, Curtis IRA | $ 225,000.00 | $ 225,000.00 | | | |
| Fleckenstein, David Regular | $ 173,933.64 | $ 167,156.64 | | | |
| Fleniken, Darvin Henry IRA | $ 170,000.00 | $ 48,500.00 | | | |
| Floyd, Edgar W. Regular | $ 51,000.00 | $ 51,000.00 | | | |
| Floyd, Phyllis Regular | $ 1,750,000.00 | $ 1,724,000.00 | | | |
| Fore Investments, Ltd. Regular | $ 100,000.00 | $ 150,000.00 | | | |
| Francis, Louis Regular | $ 100,000.00 | $ | (7,835.50) | | |
| Grandy, Bill & Barbara Regular | $ 135,000.00 | $ 135,000.00 | | | |
| Garrett, Luke Regular | $ 50,000.00 | $ 50,000.00 | | | |
| Gast, Larry Regular | $ 100,000.00 | $ 100,000.00 | | | |
| Glenrose Resources, Inc. Regular | $ 50,000.00 | $ 50,000.00 | | | |
| Gordon, Reed & Sheree Regular | $ 65,101.12 | $ 65,101.12 | | | |
| Gordon, Reed T. IRA | $ 47,350.43 | $ 47,350.43 | | | |
| Green, Royce T. Regular | $ 50,000.00 | | | | |
| Green, Gregg Regular | $ 50,000.00 | $ 148,255.93 | (7,176.54) | | |
| Gulley, Gregg Regular | $ 148,255.93 | $ 47,064.52 | | | |
| Gulley, Gregg IRA | $ 47,064.52 | $ 180,000.00 | | | |
| Gulley, Karen Karen Gulley Trust | $ 180,000.00 | $ 21,221.04 | | | |
| Gulley, Karen IRA | $ 21,221.04 | | | | |

| Name | Gross Investment | Net Balance | Overpayments | Gross Investment | Net Balance |
|---|---|---|---|---|---|
| Hagel, Richard IRA | $ — | $ — | | | |
| Hagel, Richard & Jean Cust. For Abigail | $ 30,000.00 | $ 30,000.00 | | | |
| Hagel, Richard & Jean Cust. For Alisha | $ 50,000.00 | $ 50,000.00 | | | |
| Hagel, Richard & Jean Cust. For Alizab | $ 20,000.00 | $ 20,000.00 | | | |
| Hagel, Richard & Jean Cust. For Chad | $ 50,000.00 | $ 50,000.00 | | | |
| Hagel, Richard & Jean Regular | $ 1,046,000.00 | $ 1,025,000.00 | | | |
| Hahn, Bob Regular | $ 560,000.00 | $ 560,000.00 | | | |
| Halls, Michael_Simple | $ 99,131.48 | $ 99,131.48 | | | |
| Hammer, Helen IRA | $ 141,258.86 | $ 128,419.86 | | | |
| Hammer, Michael A. Regular | $ 600,000.00 | $ 290,000.00 | | | |
| Hammer, Michael A. IRA | $ 57,258.84 | $ 57,258.84 | | | |
| Harkness Family Trust | $ 168,772.19 | $ 168,772.19 | | | |
| Harkness, Judith Cust. for Thomas Mag Regular | $ 10,500.00 | $ 10,500.00 | | | |
| Harkness, Judith E. IRA | $ 210,640.11 | $ 96,640.11 | | | |
| Harkrider, John & Lisa Regular | $ 20,000.00 | $ 20,000.00 | | | |
| Harrell & Stansel Investments Regular | $ 625,000.00 | $ 625,000.00 | | | |
| Harris, Richard A. Regular | $ 227,750.00 | $ 227,750.00 | | | |
| Harris, Ronald K. Regular | $ 120,000.00 | $ 120,000.00 | | | |
| Harshbarger, Marilyn IRA | $ 23,185.92 | $ 23,185.92 | | | |
| Harshbarger, Randy & Marilyn Regular | $ 55,400.00 | $ 21,100.00 | | | |
| Harshbarger, Randy IRA | $ 10,000.00 | $ 10,000.00 | | | |
| Hewitt, Leo Regular | $ 100,000.00 | $ 100,000.00 | | | |
| Hoffpauir, Glen & Glenna Regular | $ 20,000.00 | $ 20,000.00 | | | |
| Hollan, George Terry Regular | $ 317,900.00 | $ 317,900.00 | | | |
| Hubbert, Billie IRA | $ 66,580.99 | $ 57,980.99 | | | |
| Hubbert, Dennis & Billie Regular | $ 50,000.00 | $ 34,600.00 | | | |
| Hubbert, Dennis IRA | $ 216,943.48 | $ 216,943.48 | | | |
| Hudgins, Sarah Cust. For Truman David Hudgins | $ 20,000.00 | $ 20,000.00 | | | |
| Hudgins, Sarah IRA | $ 121,331.60 | $ 121,331.60 | | | |
| Hudgins, Sarah Regular | $ 114,336.15 | $ 100,336.15 | | | |
| Hudgins, Todd D. IRA | $ 29,847.74 | $ 29,847.74 | | | |
| Hughes, Mike IRA-Roth | $ 122,189.00 | $ 122,189.00 | | | |
| Jackson, Elliott Regular | $ 30,000.00 | $ 500.00 | | | |
| Jackson, Larry Regular | $ 205,000.00 | $ 1,700.00 | | | |
| Jackson, Larry T. & Fannie C. Regular | $ 16,000.00 | $ 16,000.00 | | | |
| Jackson, Laurie Elizabeth Regular | $ 16,000.00 | $ 500.00 | | | |
| Jackson, Nicholas Grant Regular | $ 16,000.00 | $ 500.00 | | | |
| Jackson, Aaron Regular | $ 6,215.00 | $ 6,215.00 | | | |
| Jobe, Bill IRA | $ 451,314.03 | $ 451,314.03 | | | |
| Jobe, Bill IRA-Roth | $ 17,485.85 | $ 17,485.85 | | | |

| Name | Gross Investment | Net Balance | Overpayments | Gross Investment | Net Balance |
|---|---|---|---|---|---|
| Jobe, Bill Regular | $ 370,480.00 | $ 251,480.00 | | | |
| Jobe, M.L. IRA | $ 37,982.18 | $ 37,982.18 | | | |
| Jobe, M.L. IRA-Roth | $ 19,385.15 | $ 19,385.15 | | | |
| Jobe, Paige IRA-Roth | $ 1,503.75 | $ 1,503.75 | | | |
| Jobe, Paige Regular | $ 5,130.00 | | | | |
| Jobe, Rose IRA | $ 200,000.00 | $ 180,644.58 | | | |
| Jobe, Rose IRA-Beneficiary | $ 90,889.87 | $ 79,897.48 | | | |
| Jobe, Rose Regular | $ 110,000.00 | $ 100,000.00 | | | |
| Johnson, Brian IRA | $ 92,000.00 | $ 92,000.00 | | | |
| Johnson, Dena Regular | $ 196,600.56 | $ 196,600.56 | | | |
| KEM Enterprises Regular | $ 3,818,752.72 | $ 3,818,752.72 | | | |
| Kenneth & Sandra Powell | $ 102,000.00 | $ 41,000.00 | | | |
| Ken's Minit Markets, Inc. Regular | $ 150,000.00 | | $ (100,000.00) | | |
| Kerbow, Steven L. IRA SEP | $ 188,500.00 | $ 188,500.00 | | | |
| Kerbow, Steven L. Regular | $ 200,000.00 | $ 200,000.00 | | | |
| Kiesel, Joe & Lanlee IRA Simple | $ 67,800.00 | $ 49,273.23 | | | |
| Kiesel, Joe IRA Simple | $ 143,408.65 | $ 143,408.65 | | | |
| King, A. Douglas IRA | $ 176,610.73 | $ 176,610.73 | | | |
| King, Letha IRA | $ 100,000.00 | $ 94,767.80 | | | |
| Kingham, Brothers Ltd Regular | $ 945,000.00 | $ 945,000.00 | | | |
| Kingham, James A. SEP Prop | $ 2,362,000.00 | $ 2,362,000.00 | | | |
| Kingham, Jan W. SEP Prop | $ 189,000.00 | $ 139,712.00 | | | |
| Kingham, Ltd Regular | $ 1,200,000.00 | $ 1,200,000.00 | | | |
| Krenek, Bryant, Jr. Regular | $ 100,000.00 | $ 100,000.00 | | | |
| Laird, Jonnie S. IRA | $ 14,500.00 | $ 14,500.00 | | | |
| Laird, Lynn M. IRA | $ 14,500.00 | $ 14,500.00 | | | |
| Laird, Lynn M. Regular | $ 249,956.58 | | $ (89,043.42) | | |
| Lane, Charles E III Regular | $ 140,000.00 | $ 140,000.00 | | | |
| Lane, LaJuan Regular | $ 51,000.00 | $ 51,000.00 | | | |
| Lanier, Mark & Leslie Regular | $ 357,636.77 | $ 298,136.77 | | | |
| Lanier, Mark Cust. for J. Logan Lanier | $ 50,000.00 | $ 50,000.00 | | | |
| Lanier, Mark Cust. for Robert Preston Lanier | $ 50,000.00 | $ 50,000.00 | | | |
| Lanier, Mark Regular | $ 100,000.00 | $ 100,000.00 | | | |
| LCM Family Interest, LLC | $ 3,659.85 | $ 3,659.85 | | | |
| Lewis, F.R. & T.A. Living Trust Regular | $ 250,000.00 | $ 250,000.00 | | | |
| Lewis, Henry Regular | $ 150,000.00 | $ 150,000.00 | | | |
| Lewis, Robert W. Beneficiary IRA | $ 15,192.00 | | $ (3,268.73) | | |
| Lyons, Robert C. Regular | $ 55,161.10 | | $ (22,643.91) | | |
| Lyons, Robert W. IRA | $ 140,684.57 | | $ (69,664.49) | | |
| Lyons, Robert W. Regular | $ 310,000.00 | $ 482,267.30 | $ (181,667.66) | | |
| Lyons, Sadie B. IRA | $ 12,250.93 | | $ (3,012.25) | | |
| Lyons, Taylor L. IRA | $ 52,308.22 | | $ (18,084.03) | | |
| M & M Minit Markets, Inc. | $ 177,500.00 | | $ (67,500.00) | | |

Coyle, William & Robby Regular — $ 270,000.00 | $ 270,000.00

Cooper, Clark & Roxanne Regular — $ 566,267.30

| name | Gross Investment | Net Balance | Overpayments | Gross Investment | Net Balance |
|---|---|---|---|---|---|
| Mackey, Gerald  Regular | $ 50,000.00 | $ 50,000.00 | | | |
| Martin, Charles IRA | $ 100,000.00 | $ 94,000.00 | | | |
| Martin, Charles  Regular | $ 171,000.00 | $ 165,000.00 | | | |
| Martin, Dolores IRA | $ 200,000.00 | $ 200,000.00 | | | |
| Martin, Dolores  Regular | $ 103,000.00 | $ 103,000.00 | | | |
| Massey, C. Scott  Regular | $ 250,000.00 | $ 250,000.00 | | | |
| Mathews Furniture  Regular | $ 289,155.05 | $ 66,282.62 | | | |
| Mathews, Dana L. IRA | $ 26,743.59 | $ 26,743.59 | | | |
| Mathews, Dana L. SEP Prop. | $ 1,754.88 | $ 1,754.88 | | | |
| Mathews, Janet  Regular | $ 128,307.00 | $ 104,567.82 | | | |
| Mathews, Janet  Regular 2 | $ 7,450.00 | $ 7,450.00 | | | |
| Mathews, Katie Fanning  IRA-Roth | $ 30,562.85 | $ 30,037.48 | | | |
| Mathews, Katie Fanning  SEP Prop | $ 16,773.06 | $ 13,354.33 | | | |
| Mathews, Kimberly E. IRA- Roth | $ 29,751.30 | $ 29,751.30 | | | |
| Mathews, Kimberly E.  Regular | $ 40,866.90 | $ 37,832.80 | | | |
| Mathews, Lon C.  Building Fund | $ 38,912.86 | $ 18,912.86 | | | |
| Mathews, Lon C. IRA | $ 275,301.86 | $ 275,301.86 | | | |
| Mathews, Lon C.  Partnership | $ 268,704.00 | $ 2,972.00 | | | |
| Mathews, Lon C.  Partnership SEP Prop | $ 902,941.74 | $ 699,825.53 | | | |
| Mathews, Lon C.  Simp | $ 91,441.49 | $ 88,248.71 | | | |
| Mathews, Lon C.  Special | $ 11,000.00 | $ 11,000.00 | | | |
| Mathews, Lon Cust. for Jackson Shaw  Regular | $ 1,000.00 | $ 1,000.00 | | | |
| McCarver, Vickie  IRA | $ 110,000.00 | | $ (82,600.00) | | |
| McGee, Renee  Regular | $ 500,000.00 | $ 500,000.00 | | | |
| McGee, Virginia  Regular | $ 85,000.00 | $ 85,000.00 | | | |
| McGill, Monty  Regular | $ 30,000.00 | | $ (5,000.00) | | |
| McGrede, Henry & Wanda  Regular | $ 165,000.00 | $ 165,000.00 | | | |
| McHaney, Kenneth & Mary  Regular | $ 312,500.00 | | $ (22,500.00) | | |
| McHaney, Kenneth IRA | $ 127,167.73 | $ 127,167.73 | | | |
| McHaney, Mary IRA | $ 57,456.52 | $ 92,167.73 | | | |
| McKinnon, Michael IRA | $ 100,551.96 | $ 17,456.52 | | | |
| McKinnon, Gloria Gene  Regular | $ 50,064.84 | $ 100,551.96 | | | |
| McLemore, Brenda IRA | $ 197,893.56 | $ 50,064.84 | | | |
| McLemore, Brenda  Regular | $ 126,908.50 | $ 197,893.56 | | | |
| McLemore, Opal IRA | $ 971,864.44 | $ 109,604.33 | | | |
| McLemore, Opal  Regular | $ 1,420,389.69 | $ (27,316.56) | | | |
| McLemore, Randy & Terre  Regular | $ 69,287.10 | $ 1,420,389.69 | | | |
| McLemore, Rea Jeanette IRA | $ 36,000.00 | $ 46,787.10 | | | |
| McLemore, Varon Cust. For Emily Brooke McLemore | $ 36,000.00 | $ 20,419.00 | | | |
| McLemore, Varon Cust. For Vincent Eric McLemore | $ 80,629.53 | $ 16,916.00 | | | |
| McLemore, Varon E. IRA | $ 50,000.00 | $ 33,129.53 | | | |
| McLemore, Varon E.  Regular | $ 23,000.00 | $ 26,008.27 | | | |
| McLemore, Vernon & Brenda  Regular | $ 548,714.20 | | $ (15,751.34) | | |
| McLemore, Vernon IRA | $ 1,455,316.02 | $ 548,714.20 | | | |
| McLemore, Vernon  Regular | | $ 165,316.02 | | | |

| Name | Gross Investment | Net Balance | Overpayments | Gross Investment | Net Balance |
|---|---|---|---|---|---|
| McMorries, Bill R.  IRA SEP | $ 300,000.00 | $ 294,687.76 | | | |
| McMorries, Bill R.  Irrevocable Family Trust | $ 647,004.10 | $ 647,004.10 | | | |
| McMorries, Bill R. R.L.T. Regular | $ 374,967.17 | $ 374,967.17 | | | |
| McMorries, Billie Jean Family Trust | $ 915,000.00 | $ 915,000.00 | | | |
| McMorries, Billie Jean Marital Trust | $ 640,000.00 | $ 640,000.00 | | | |
| McMorries, Deborah D. R.L.T. | $ 550,000.00 | $ 550,000.00 | | | |
| McMorries, Kim & Debbie Tax Account | $ 509,543.00 | $ 254,543.00 | | | |
| McMorries, Kim Irrevocable Live Insurance | $ 335,000.00 | $ 335,000.00 | | | |
| McMorries, Kim MD IRA-SEP-Prop | $ 1,360,000.00 | $ 1,360,000.00 | | | |
| McMorries, Kim Qualified Personal Residence Trust | $ 589,718.38 | $ 589,718.38 | | | |
| McMorries, Kim R.L.T. | $ 585,000.00 | $ 585,000.00 | | | |
| McMorries, Kim RLT Oil & Gas | $ 134,751.20 | $ 95,208.20 | | | |
| McMorries, Susan A. Family Trust | $ 125,000.00 | $ 35,281.62 | | | |
| Mission-Heights Enterprises, Ltd | $ 100,000.00 | $ 100,000.00 | | | |
| Mock, Linda IRA | $ 205,025.36 | $ 205,025.36 | | | |
| Mock, Linda Roth | $ 9,755.31 | $ 9,755.31 | | | |
| Monroe, Clyde Donald Regular | $ 100,000.00 | $ 100,000.00 | | | |
| Morrison, Jane Regular | $ 32,437.66 | $ 12,437.66 | | | |
| Morton, Craig Inheritance Account | $ 221,723.08 | $ 221,723.08 | | | |
| Morton, Craig IRA | $ 111,738.29 | $ 111,738.29 | | | |
| Morton, Craig Regular | $ 819,612.00 | $ 819,612.00 | | | |
| Muckleroy, Morris & Alice Regular | $ 1,050,000.00 | $ 1,050,000.00 | | | |
| Mueller, Brad & Pamella Regular | $ 137,000.00 | $ 137,000.00 | | | |
| Mueller, Pamella IRA | $ 56,723.45 | $ 56,723.45 | | | |
| Muller, Ora N. IRA | $ 75,000.00 | $ 75,000.00 | | | |
| Munch, Scott for Alissa Munch | $ 20,000.00 | $ 20,000.00 | | | |
| Munch, Scott for Amanda Munch | $ 20,000.00 | $ 20,000.00 | | | |
| Munch, Scott for Ashton Munch | $ 20,000.00 | $ 20,000.00 | | | |
| Munch, Susan Regular | $ 40,000.00 | $ 40,000.00 | | | |
| NAC-TY-S (Frank Ashcroft) | $ 340,000.00 | $ 141,543.32 | | | |
| Nash, James & Brenda Regular | $ 359,602.07 | $ 84,602.07 | | | |
| Nelson, Richard IRA | $ 21,656.75 | $ 21,656.75 | | | |
| Neuhaus Partnership Regular | $ 100,000.00 | $ 100,000.00 | | | |
| Neuhaus, Judith Regular | $ 165,000.00 | $ 163,000.00 | | | |
| Neuhaus, Victor J. IRA | $ 500,000.00 | $ 488,500.13 | | | |
| Patrim, LLC Regular | $ 300,000.00 | $ 255,000.00 | | | |
| Pennick, Martin & Jenna Regular | $ 90,000.00 | | $ (27,000.00) | | |
| Phillips, Stuart Regular | $ 40,000.00 | $ 9,681.51 | | | |
| Pitts, Mildred L. Regular | $ 684,130.80 | $ 605,830.80 | | | |
| Pitts, Mildred L. Roth | $ 124,976.66 | $ 124,976.66 | | | |
| Powell, Randy IRA | $ 506,110.79 | $ 506,110.79 | | | |
| Powell, Randy Regular | $ 380,000.00 | $ 149,316.00 | | | |
| Powell, Reuben IRA | $ 149,370.37 | $ 89,370.37 | | | |
| Powell, Reuben Regular | $ 115,000.00 | $ 75,000.00 | | | |
| Randall, Dayla | $ 6,427.00 | $ 9,323.00 | | | |

| Name | Gross Investment | Net Balance | Overpayments | Gross Investment | Net Balance |
|---|---|---|---|---|---|
| Randle Family Limited Partnership | $ 250,000.00 | $ 250,000.00 | | | |
| Raybon Ward Hamilton Family Trust | $ 59,475.00 | $ 40,000.00 | | | |
| Raybon Ward Hamilton Family Trust IRA | $ 19,475.00 | $ 19,475.00 | | | |
| Redfearn, Jacey Lynn | $ 16,250.00 | $ 16,250.00 | | | |
| Redfearn, Jane E. | $ 25,200.00 | $ 23,950.00 | | | |
| Redfearn, John N., Jr. | $ 16,250.00 | $ 16,250.00 | | | |
| Redfearn, John N., Sr. | $ 31,200.00 | $ 29,950.00 | | | |
| Redfield, Carla | $ 40,000.00 | $ 40,000.00 | | | |
| Redfield, Carla Cust. For Cawen Y. Redfield | $ 2,504.41 | $ 2,504.41 | | | |
| Redfield, Carla Cust. For James E. Redfield | $ 2,851.24 | $ 2,851.24 | | | |
| Redfield, Dr. James E., Jr. | $ 144,818.99 | $ 144,818.99 | | | |
| Redfield, Jana Lea IRA | $ 55,235.44 | $ 55,325.44 | | | |
| Redfield, John D IRA | $ 150,887.41 | $ 150,887.41 | | | |
| Redfield, John D Simple | $ 27,359.57 | $ 27,359.57 | | | |
| Ritter, Kyle | $ 13,515.00 | | $ (5,283.64) | | |
| Roan & Hoffpauir Surveying, Co., Ltd | $ 20,000.00 | $ 20,000.00 | | | |
| Roan, Stephen | $ 16,000.00 | $ 6,000.00 | | | |
| Roberts, Dr. J. T. | $ 110,000.00 | $ 110,000.00 | | | |
| Roberts, Michael M | $ 427,241.24 | $ 219,741.24 | | | |
| Roberts, Sandra K | $ 200,000.00 | $ 200,000.00 | | | |
| Robinson, Bryan & Judy | $ 50,000.00 | $ 48,453.00 | | | |
| Robinson, Bryan Simple | $ 19,547.00 | $ 19,547.00 | | | |
| Rogers, Kenneth D. IRA | $ - | $ - | | | |
| Rogers, Kenneth D. Regular | $ 213,967.56 | $ 213,967.56 | | | |
| Rogers, Sally L. IRA | $ - | $ - | | | |
| Rogers, Sally L. Regular | $ 175,915.07 | $ 175,915.07 | | | |
| Saconas, Edward S. Trustee | $ 100,000.00 | $ 100,000.00 | | | |
| Saconas, Investments Partners | $ 100,000.00 | $ 100,000.00 | | | |
| Sandcbob Investments | $ 50,000.00 | $ 50,000.00 | | | |
| Sanders, Michael | $ 100,000.00 | | $ (9,740.88) | | |
| Schmidt, Catherine IRA | $ 190,000.00 | $ 190,000.00 | | | |
| Schmidt, Frank IRA | $ 878,019.73 | $ 878,019.73 | | | |
| Schmidt, Frank Regular | $ 85,000.00 | $ 35,000.00 | | | |
| Schmidt, Larry | $ 1,052,400.43 | | $ (635,451.08) | | |
| Seecrest Family Partnership | $ 280,000.00 | $ 280,000.00 | | | |
| Secrest, Robert & Holly | $ 270,000.00 | $ 270,000.00 | | | |
| Secrest, Robert & Sandra | $ 100,000.00 | $ 14,000.00 | | | |
| Secrest, Robert Cust. For Derek Secrest | $ 22,000.00 | $ 22,000.00 | | | |
| Secrest, Robert Cust. For Dillion Secrest | $ 22,000.00 | $ 22,000.00 | | | |
| Secrest, Robert Cust. For Rusty Secrest | $ 22,000.00 | $ 22,000.00 | | | |
| Secrest, Robert D. IRA | $ 204,398.59 | $ 204,398.59 | | | |
| Secrest, Sandra Cust. For Shannon L. Lo | $ 17,000.00 | $ 17,000.00 | | | |
| Secrest, Sandra J. IRA | $ 14,000.00 | $ 14,000.00 | | | |
| Shaw, Jasper Regular (Lon Mathews) | $ 200.00 | $ 200.00 | | | |
| Shipman, Jenifer L. | $ 16,250.00 | $ 16,250.00 | | | |

| Name | Gross investment | Net balance | Overpayments | Gross investment | Net balance |
|---|---|---|---|---|---|
| Signor, Charles | $ 800,000.00 | $ 782,614.00 | | | |
| Sisk, Christen C. | $ 20,655.95 | $ 17,921.85 | | | |
| Sparks, Ben P. | $ 100,000.00 | $ 100,000.00 | | | |
| Snider, Calvin H. | $ 50,000.00 | $ 50,000.00 | | | |
| Snider, Katherine W. | $ 48,344.92 | $ 7,044.92 | $ (102,200.00) | | |
| Smith, Russell R. & Patricia T. | $ 50,000.00 | $ 50,000.00 | | | |
| Smith 1999 Family Partnership, Ltd. | $ 175,000.00 | $ 175,000.00 | | | |
| Spies, Lisa A | $ 50,000.00 | $ 50,000.00 | | | |
| Spies, Henry A. Regular | $ 150,000.00 | $ 150,000.00 | | | |
| Spies, Henry A. IRA | $ 441,594.85 | $ 441,594.85 | | | |
| Stansel, Dan & Shirley | $ 300,000.00 | $ 250,200.00 | | | |
| Stansel, Dan IRA | $ 79,599.49 | $ 80,139.49 | | | |
| Stansel, Shirley IRA | $ 88,785.81 | $ 86,785.81 | | | |
| Stephens, Brent A., DDS | $ 100,000.00 | $ 100,000.00 | | | |
| Still, Jeannett #1 | $ 335,000.00 | $ 30,700.00 | | | |
| Still, Jeannett #2 | $ 723,300.00 | $ 178,285.00 | | | |
| Still, Jeannett #3 | $ 10,000.00 | $ 10,000.00 | | | |
| Still, Jill | $ 100,000.00 | $ 100,000.00 | | | |
| Still, Joe Evan IRA | $ 31,250.00 | $ 31,250.00 | | | |
| Still, Joe Evan Regular | $ 52,500.00 | $ 52,500.00 | | | |
| Still, Rick IRA | $ 145,000.00 | $ 145,000.00 | | | |
| Still, Rick IRA-Roth | $ 11,056.63 | $ 11,056.63 | | | |
| Still, Rick Regular | $ 175,000.00 | $ (201,500.00) | | | |
| Still, Rick SEP | $ 16,940.00 | $ 16,940.00 | | | |
| Stout, John & Gerl Regular | $ 139,824.22 | $ 110,324.22 | | | |
| Stout, John W. IRA | $ 51,460.90 | $ 51,460.90 | | | |
| Sullivan, Ann IRA | $ 4,500.00 | $ 15.72 | | | |
| Sullivan, Ann Regular | $ 35,500.00 | | | | |
| Valley, Margaret M. IRA | $ 38,134.87 | $ 38,134.87 | $ (1,062.41) | | |
| Valley, Wayne & Margaret | $ 183,102.00 | $ 183,102.00 | | | |
| Valley, Wayne S. IRA | $ 701,534.80 | $ 701,534.80 | | | |
| Valley, Wayne S. Trustee for Cathrine A. | $ 144,000.00 | $ 144,000.00 | | | |
| Vardeman, Blanche Lamerle | $ 50,000.00 | $ 47,881.06 | | | |
| Vardeman, James P. | $ 100,000.00 | $ 100,000.00 | | | |
| VEM Enterprises, Inc. | $ - | $ - | | | |
| Verdine, Renee | $ 9,450.00 | $ 2,450.00 | | | |
| Victor, Family Trust | $ 50,000.00 | $ 50,000.00 | | | |
| Vincent, Jeff | $ 180,000.00 | $ 90,000.00 | | | |
| Walker, Ted IRA | $ 140,000.00 | $ 140,000.00 | | | |
| Walker, Ted Regular | $ 110,000.00 | $ 17,000.00 | | | |
| Ward, Edna | $ 65,000.00 | $ 65,000.00 | | | |
| Warren, Kathy | $ 14,500.00 | $ 14,500.00 | | | |
| Warthan Investments | $ 133,800.00 | $ 133,800.00 | | | |
| Whitaker, Eddie & Angela | $ 35,000.00 | $ 14,800.00 | | | |
| White, Carroll E. | $ 198,866.94 | $ 198,866.94 | | | |

| Name | Gross Investment | Net Balance | Overpayments | Gross Investment | Net Balance |
|---|---|---|---|---|---|
| White, Lana S. | $ 19,500.00 | $ 19,500.00 | | | |
| White, Leonard, Jr. Beneficiary of Eva White | $ 32,483.49 | $ 32,483.49 | | | |
| White, Leonard, Jr. IRA | $ 27,778.53 | 23,355.69 | | | |
| White, Leonard, Jr. Regular | $ 59,393.30 | | $ (17,029.24) | | |
| Wilcox, Charles R. | $ 320,000.00 | $ 320,000.00 | | | |
| Windmill Resources | 140,000.00 | 140,000.00 | | | |
| Wulf, Benjamin | 45,000.00 | 45,000.00 | | | |
| Wulf, Fred, II IRA | 25,000.00 | 25,000.00 | | | |
| Wulf, Fred, II Regular | 10,000.00 | 10,000.00 | | | |
| Wulf, Mickey IRA | $ 40,000.00 | $ 40,000.00 | | | |
| | $ 92,031,237.25 | $ 74,872,955.31 | $ (4,416,533.02) | | |